Your Honor. Okay, Plowright v. Miami Dade County, Mr. Robinson. Morning, Your Honors. Please the court. I'm William Robinson on behalf of Mr. Plowright. We're here to seek a reversal of an order dismissing our complaint. As this court is well aware, people love their dogs and they've been close to their dogs for many different reasons. And this court has grappled in this circuit on many occasions with circumstances where dogs have been shot by police. In the last five years, we've seen a number of decisions starting with the Waltz decision where dogs have been running wild and come upon by the police and the police have shot them. The decision in Waltz was followed by another decision in Davis where again, an unrestrained dog was running and the police confronted him and were required to kill him because of an imminent threat and a danger to them. Most recently in the Argo case, the 2021 case, the court also decided that or pointed out that there's a robust consensus in the United States about the Fourth Amendment applying to a seizure of dogs. And it pointed out that every other circuit in this country has acknowledged that the dog is in effect that can be improperly seized pursuant to the Fourth Amendment. Strikingly, this circuit is one of the only one that has not really made that acknowledgement to date that the dog is protected under the Fourth Amendment seizure. Is that a big problem for you in a qualified immunity context in that we don't have any controlling authority that would hold that a police officer violates the Fourth Amendment by shooting a pet? Well, clearly Judge, the court has not touched on it and we would argue that that's one of the weaknesses with qualified immunity as overall, because this whole concept of clearly established- I know qualified immunity is controversial, Mr. Robinson, but nevertheless, for those of us on what the Constitution refers to as inferior courts, we're bound by Supreme Court precedent that says qualified immunity is still a thing. So controversial or not, it's the law. And our law says that you have to have clearly established laws, that you have to have controlling authority that would have put the officer on fair notice that he was violating the Fourth Amendment. And in the absence of any decision by the Supreme Court or this circuit or the state Supreme Court, under our precedents, I'm having a hard time understanding how you can get over qualified immunity. Well, Judge, this court recently ruled in the case of Cook v. May that qualified immunity is a balancing process between the rights of the officers and the rights of the citizens. And one of the ways to establish the fairness is to recognize obvious clarity of the situation. So if we look at the situation, it's pretty clear that a reasonable officer would understand that you just can't shoot a dog who is non-threatening, who's not attacking you or doing anything like that. So we believe that the obvious clarity exception to the clearly established law rule would apply in this case because Mr. Plowright was not committing a crime. Mr. Plowright was not under arrest. Mr. Plowright's dog was not an imminent threat. Mr. Plowright was right there with his dog when the officers came to his house with guns pointed. So it's our perception, Judge, that this court has consistently denied qualified immunity to officers where they are not facing a threat and they're not under any circumstance, split-second decision, Judge. In this case, the officers were there for minutes before the dog was shot. There were plenty of other alternatives that could have been used by the police instead of tasing and then killing this dog. So pursuant to the case law, Judge, we believe under obvious clarity exception to the clearly established standard, Mr. Plowright's complaint could at least be accepted as a clear and concise statement of the facts. A reasonable jury could find that the officers acted inappropriately here, and that's something, Judge, that could be ferreted out in a summary judgment. But in terms of a motion to dismiss, we believe it's time for the court to recognize that under the Fourth Amendment, the seizure of a dog is something that's covered and protected and accept Mr. Plowright's complaint as it's filed. Judge, I wrote this complaint— I just want to be sure that I'm clear on your position on this. You agree, then, that we have no clearly established law on this subject, so you have to go off on obvious clarity grounds, correct? Yes, Judge. Okay. So recognizing that, Your Honor, we believe that the court can reverse the lower court's dismissal of the complaint and allow the case to go forward. We also believe that Mr. Plowright's claim for intentional infliction of emotional distress is meritorious. It's very sad to see a person have their property taken from them right in front of them in such a violent way, tased and killed. It's very clear, Judge, that the training by Miami-Dade County was implemented improperly. We've attached a newspaper article where they are quoted in the paper as stating that they did not consistently apply a policy that should have been implemented more clearly for the officers. So it's our position, Judge, that because of the obvious clarity of the situation, Mr. Plowright, the court should reverse the lower court's ruling in this matter. Thank you, Mr. Robinson. You've saved some time for rebuttal. Ms. Zarin. Thank you, Judge. Good morning, Your Honors. May it please the court, Assistant County Attorney Erica Zarin on behalf of Miami-Dade County and the named police officers in this case. The district court properly dismissed this case where the facts alleged showed that an officer was approached by a barking, unrestrained dog. That officer shot that dog, and he was there responding to a scene of a suspicious activity. Under these circumstances, as Your Honor- But doesn't the complaint allege that what happened was there were two officers, the first officer tazes the dog, and by the assertion in the complaint, knocks the dog down. The dog is basically lying on the ground whimpering. At that point, the allegation is, if I have it right, or at least the inference one would draw from that, that the dog was no longer a threat. That may not be true, but we're obliged to take the complaint and the facts asserted as true. So if you accept that the dog was down, incapacitated, and no longer posed a threat, could a police officer simply blow the dog away at that point without running afoul of the Fourth Amendment? Well, Your Honors, hit on one thing. There is no clearly established law as to two points that are significant in this case. Whether a dog is in effect and is of some sort of property interest which the Fourth Amendment protects, but also what is the reasonable level of force that may be used? Well, let's take it just point by point. Proposition one, is the dog property of its owner? I would have thought that answer is abundantly clear under Florida law, and indeed common law going back to the founding of the Republic. As I see Florida law, privately owned dogs have been considered personal property in Florida for multiple reasons. Taxation, larceny, recovery of wrongful property, indeed even due process deprivations have been recognized by Florida law, indeed dogs have been considered personal property under common law going back, as I said, to the beginning. So it would be clearly established, would it not, that a dog is the property of its owner? I think it depends on the context in which the dog is encountered. In this case, this dog was not on a leash. It was not in the owner's hands. There is no indication from the complaint other than- It doesn't go to the question of whether the dog is indeed the personal property of its owner. It may go to something else, but it struck me that if we just took it piece by piece, it would be impossible to dispute the proposition that the dog is the property of its owner. That doesn't take you all the way home for purposes of the pleading, but I just wanted to take it piece by piece. Do you agree that a dog is the property, the personal property of its owner under the longstanding law of the state? I believe that a dog in its owner's, under its owner's control is its property. So it's not its property if the dog is not on a leash, but is on the property of its owner? Well, if we look at it from the reasonable perspective of an officer, which is what we're as the complaint alleges to a dimly lit driveway on a 911 call for suspicious activity and encounters a dog not on a leash. That may fully justify everything that happened, but that's not the question I've asked, or unless I may have misunderstood something here. The question I asked is whether it was the personal property of its owner. It seems to me the answer is indisputably yes, whether the dog is on a leash or not. This was not a feral dog roaming the streets loose that had broken loose of the ownership and control, you know, of its master. This was a dog owned to a man on the personal property on the driveway of the house. Yes, Your Honor, I would concede that a dog is personal property of its owner. All right, let me ask you a second proposition then in terms of what is clearly established in this law, what any officer in Miami-Dade County would have had to have known at the time of the shooting. I take it if it's property and you deprive the owner of the enjoyment of that property, that could state a claim under the Fourth Amendment, could it not? It could be a seizure. The question becomes reasonableness. Okay, but it could be a seizure. Yes. So if, for example, you came on my property and you blew away my dog with a shotgun, because you just didn't like how loud it barked and you were the police officer, would that not state a claim for a 1983 Fourth Amendment taking? Is the question, would it be a claim that would survive qualified immunity? I would say no, because there is no clearly established law in this circuit as to the rights of the police to engage with an animal that is unpredictable. I was just trying to break it down into the component parts and ask whether each component part was clearly established. And it seems to me we can agree with proposition one, which is that the dog is indeed the property of its owner. We have the allegation that the dog was utterly incapacitated at the time the second officer shot three bullets and killed the dog. We can agree that that amounts to the complete deprivation of the property and the enjoyment of the property by the owner. If all of those propositions are clear and you accept the complaint and its assertions as true, why wouldn't that lead any reasonable officer in Dade County to know with obvious clarity that he couldn't blow away this dog? I would argue, Your Honor, that specifically because of this court's opinion in Corbett v. Vickers, which was a decision where police officers responded to a yard where it encountered a dog. It was not in the yard of the suspect. The suspect ran into this yard. The police officers encountered a dog, and the dog is alleged to merely have been proceeding toward its owner, proceeding towards owner. In this case, Mr. Plowright has said in the brief, his initial brief, I believe on page 13, I'm sorry, on page 2, that the dog was approaching the officers. But the most important point is that an officer could read that case and understand that in shooting that animal under the conditions you just described, they would not violate. I thought the conditions that Judge Marcus just described were that the dog was utterly incapacitated. Your Honor, I don't believe that the words utterly incapacitated appeared in the Second Amendment complaint as the use of the taser and the shooting are described as nearly simultaneous. The complaint alleges that after the dog was already down from the taser, right? And I think Judge Marcus was inferring from that that it was utterly incapacitated. Why wouldn't that allegation that the dog was already down from the taser lead you to that inference? I would return again to Corbett v. Vickers, where the dog was approaching, not incapacitated, but approaching its owner, doing something seemingly completely innocent. You see, here's the problem. The problem, though, is that we've got to take the complaint as true, and we're obliged to draw all reasonable inferences from those facts. According to the complaint, the dog was tased, which, quote, sent the dog into shock. After the dog was, quote, already down and was being consoled by Plowright, Hodova shot Niles at least twice. That's the allegation in the second amended complaint, isn't it? Yes, Your Honor. I believe that. So wouldn't that factually be different from the case that you were citing? It is factually different, but again, police officers are not obligated to understand the fine nuances. They are expected to understand the case law as it is and use it as guidance as far as their rights vis-a-vis, in this case, an animal, which is unpredictable. Well, let's just say, let's just accept for the purposes of our discussion, the dog was really down. He was tased twice, multiple voltage, sent into shock. He was on the ground, shaking, not moving, clearly incapacitated. Let's just suppose the complaint had actually used the verb incapacitate. Just accept that for my purposes. Could it not state a claim under the fourth amendment for an officer then to just shoot the dog in the head and kill him? Again, I believe, Your Honor, it would potentially state a claim of a constitutional violation. Yes, I'm talking about a fourth amendment claim. Destruction of property, depriving the owner of the enjoyment of his property, the comfort that he took from his dog. Yes, Your Honor. But just like this court did in Dukes v. Deacon, where it confronted a horrific set of facts, an officer using a flashbang device thrown into a room that was occupied. The court found it horrific. It found it to be a violation of the fourth amendment. However, it found that the law was not clearly established and it awarded the officers qualified immunity there. That's the analysis I would- Could an officer pulling over a car for a vehicular violation, maybe he was speeding, maybe he was driving erratically, cop pulls somebody over, show me your license, your registration, your insurance, get out of the car, looks at the documents, looks at the watch that the driver is carrying. Let me see your watch. He says, okay, here's my watch. The officer smashes the watch. No case on point, but he stated a claim under 1983 for the violation of the fourth amendment for the deprivation of his personal property. I believe so, Your Honor. You're- Okay, where's the difference? The difference here is it's not an inanimate object, it's a dog. But if you accept that the dog was, as I put it in the hypothetical, utterly incapacitated, what's the difference? Again, one is an inanimate object, one is an unpredictable animal, and there is no guidance because the confrontation, the experience of police officers confronting animals in live crime scenes involves a number of unpredictable factors that we don't ask police officers to look back with 20-20 hindsight and correct them. I do believe there's a significant difference between the hypothetical Your Honor just posed and an animal who has been, as the complaint alleges, tased and in shock and on the ground. Let's talk about the Corbett case, which you said would let officers know that it was okay to shoot a dog under certain circumstances. The issue in that case was, what happened was the officer was trying to shoot the dog, but he shot a bystander instead. So the question was whether it's clearly established that it's a constitutional violation for an officer to shoot a bystander in those circumstances. Isn't that right? That's true, Your Honor, but there was a very important line from that case that, if I may just pull up, that the court said, this is not a case that so obviously violates the Fourth Amendment that prior case law is unnecessary to hold Vickers individually liable for his conduct. To find otherwise would require us to conclude that no reasonable officer would have fired his gun at the dog under the circumstances. And so the precise issue that we're confronting here was in Vickers, however, the party who was seeking relief had been struck by the bullet. But the concept was, what was the officer confronting in the moment and was his action in response to that reasonable or not, which is why I would say an officer reading Corbett v. Vickers would think that his response here was at least not unconstitutional in violation of the Fourth Amendment. Well, but again, there the dog was up and walking around. So even if officers might take some guidance from that dicta here, we have to assume that the dog was on the ground, right? Yes, Your Honor, although engaged in innocent conduct approaching its owner. So as far as whether or not it's down or approaching its owners, I would argue, again, we're dealing with the unpredictability of an animal. And I don't believe that there's an allegation in the complaint that the dog was utterly incapacitated. I think that's important in terms of tasing an animal and what is the effect on that animal and assuming that it was completely incapacitated. So you're supposed to read the allegation in the complaint that the dog, after being tased, is in shock and is down when the officer shoots the dog. How else are we to read that other than that the dog has been incapacitated? Well, there have been instances, many instances involving humans when a human has been tased and down, but able to use other body parts. Tasing only incapacitates the part of the body that is within the cycle of the taser. The rest of the body is movable. Let me ask you the question this way. Isn't this really an issue better addressed with a full record on summary judgment than on a motion to dismiss where we have to concede he's got personal property interest in the dog, the dog is blown away, and the claim is he was down and the inference is he was out for purposes of posing any threat? Your Honor, I'd return to where we started with Chief Judge Pryor's question. Isn't it a problem that the law isn't clearly established? I don't think this meets the obvious clarity exception that has only been applied by the Well, we've applied it in other instances. You have. You have, Your Honor. No question. We had a case, Levy-Ferraro, where a woman's honking her horn here on Biscayne. Cop doesn't like that she's honking the horn. By the account in the complaint, the cop pulls her out of the car, cuffs her for a vehicular violation, which blowing a horn is a vehicular violation in the absence of a danger. He takes her to the back of the car, smashes her head against the trunk of the car three times. The district court said, violates the Fourth Amendment, but there's no clearly established law. We reversed and we said, you bet it does. Any reasonable officer would have to know under these circumstances you couldn't do that. I understand, Your Honor. It's not just Saussure and the Supreme Court. I mean, there's a long list of cases where our court and other circuits have, you know, have denied qualified immunity. Not on the theory there was clearly established law, but it was so obvious. I understand, Your Honor. I would just say this does not approach that level of authority that you've cited. I understand. Thank you, Your Honor. Okay. Mr. Robinson. Mr. Robinson, that is a, that was wise, so wise. Thank you. Okay. Uh, Goldfarb versus Reliant Standard.  Mr. Backprack.